# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-24073-BLOOM/Otazo-Reyes

ZACHARY ADAMS,

     Plaintiff,

v.

SKY LEASE 1, INC.,
a Florida Corporation
doing business as
Sky Lease Cargo,

     Defendant.

_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant Sky Lease 1, Inc.'s Motion for Summary Judgment, ECF No. [28] ("Motion"). Plaintiff Zachary Adams filed a Response in Opposition, ECF No. [38], to which Defendant filed a Reply, ECF No. [44]. The Court has reviewed the Motion, all supporting and opposing submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted.

## I.  BACKGROUND

On November 18, 2021, Plaintiff Zachary Adams ("Adams") filed the instant action alleging employment discrimination. *See* ECF No. [1]. Specifically, in his Complaint, Plaintiff alleges the following against his former employer, Defendant Sky Lease 1, Inc. ("Sky Lease"): discrimination based on race in violation of Title VII, U.S. Civil Rights Act, 42 U.S.C. § 2000e *et seq.* (Count I); discrimination based on national origin in violation of Title VII, U.S. Civil Rights Act, 42 U.S.C. § 2000e *et seq.* (Count II); discrimination based on race in violation of Florida Civil

Case No. 21-cv-24073-BLOOM/Otazo-Reyes

Rights Act, §§ 760.01-760.11 Fla. Stat. (Count III); and discrimination based on national origin in violation of Florida Civil Rights Act, §§ 760.01-760.11 Fla. Stat. (Count IV). *Id*.

On January 4, 2023, Defendant filed the instant Motion in which it contends that the Court should grant summary judgment on all counts because Defendant terminated Plaintiff for legitimate, nondiscriminatory reasons, and Plaintiff has not provided evidence of pretext. *See generally* ECF No. [28]. Plaintiff responds that he has presented evidence which fully supports a *prima facie* case that his termination was discriminatory. *See generally* ECF No. [38]. Plaintiff argues that genuine disputes exist as to the material facts regarding whether Defendant's purported reasons for terminating Plaintiff were pretextual, so summary judgment should not be granted. *See id*.

## II. MATERIAL FACTS

Unless otherwise stated, the facts below are not in dispute.

Defendant is a cargo airline regulated by the Federal Aviation Administration ("FAA"). ECF No. [27] ¶¶ 1-2. On January 17, 2019, Defendant hired Plaintiff as its Director of Operations. *Id*. ¶ 5. In that role, Plaintiff was responsible for ensuring the day-to-day operation was carried out safely and efficiently, managing all flight/station operations, and providing trained, standardized, and disciplined flight, station management and operations personnel for all flying activities. *Id*. ¶ 6. Plaintiff supervised employees, including the Chief Pilot, Director of Flight Standards, pilots (administratively), flight followers, Crew Scheduling Supervisor, and crew schedulers. *Id*. ¶ 8.

During the relevant period, Marcos Montesano ("Montesano") was Defendant's Executive Director and Alfonso Rey ("Rey") was Defendant's owner. *Id*. ¶ 10. The rest of the management team during Plaintiff's employment included: (i) Chief Operating Officer Wade Johnson ("Johnson") (White, U.S. born); (ii)Vice President of Maintenance Richard Strehse (White, U.S.

born); (iii) Director of Operations Plaintiff (White, U.S. born); (iv) Director of Engineering Cees de Regt (White, born in Netherlands); (v) Director of Security Eva Henderson (White, born in Italy); (vi) Director of Quality Control Doug Eccles (Non-White, born in Trinidad & Tobago); (vii) Director of Safety Michelle Gonzalez ("Gonzalez") (Hispanic, born in Puerto Rico); (viii) Director of Maintenance Ernesto Diaz (Hispanic, born in Cuba); (ix) Chief Pilot Hernan Fuentes (Hispanic, born in Chile); and (x) Chief Financial Officer Fernando Canepa (Hispanic, born in Argentina). *Id.* ¶ 11.

Montesano confronted Plaintiff after an incident involving IT Manager Carlos Ramirez ("Ramirez") and accused Plaintiff of being rude, abrupt, and suggested that Plaintiff was going to start a fight with Ramirez. *Id.* ¶ 33. Defendant contends that other complaints were made about Plaintiff being rude to employees during the term of his employment. *Id.* ¶ 34. Plaintiff disputes that any formal complaints were filed and disputes that he was rude to any employees. ECF No. [33] ¶ 34 (RMF).[1]

In November 2019, Plaintiff informed Johnson that he was leaving Defendant because he was offered a higher paying job. ECF No. [27] ¶ 63. Plaintiff was thereafter offered $32,000.00 in additional compensation by Defendant. *Id.* ¶ 66. Specifically, Plaintiff's salary increased by $10,000.00 on December 1, 2019, and Defendant offered Plaintiff an additional $22,000.00 to write a ground service manual. *Id.*

---

[1] Plaintiff includes both his Response to Defendant's Statement of Material Facts and his Statement of Additional Material Facts in the same filing. ECF No. [33]. The Court adds a parenthetical (RMF) to denote paragraph numbers in the Response to Defendant's Statement of Material Facts and a parenthetical (AMF) to denote paragraph numbers in the Statement of Additional Material Facts.

During Plaintiff's tenure, he sought to enforce the FAA and international aviation conventions that all flight communications be conducted in English only. ECF No. [33] ¶¶ 45, 47 (RMF). It is disputed whether Plaintiff sought to extend an "English Only" policy to communications not required to be conducted in English by the FAA.

In February 2020, Plaintiff learned that Gonzalez and crew scheduler Natali Rico ("Rico") were expressing dissatisfaction with Plaintiff's leadership and complaining about him directly to Montesano and Rey. ECF No. [27] ¶ 68. The pilot's union leader made similar complaints to Montesano and Rey about Plaintiff's leadership. *Id*. ¶ 69. On February 12, 2020, Plaintiff sent an email to all flight crew in which he required "that when problems and concerns need to be addressed," employees "are expected to follow the chain of command." ECF No. [26-3] at 1.

On February 19, 2020, Montesano met with Plaintiff and terminated his employment. ECF No. [27] ¶ 86. Plaintiff was replaced as Director of Operations by Alex Espinal ("Espinal"). *Id*. ¶ 94. Plaintiff requested a meeting with Rey who told Plaintiff that he was asked to leave because Rey did not trust Plaintiff after the way Plaintiff negotiated a raise. ECF No. [33] ¶ 20 (AMF).

On July 16, 2020, Plaintiff filed a complaint with the U.S. Department of Labor's Office of the Whistleblower Protection Program alleging that he was terminated for whistle-blowing activities. ECF No. [27] ¶ 98. The complaint filed with the Department of Labor does not reference or complain about discrimination. *Id*.

**III. LEGAL STANDARD**

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th

Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Further, the Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

## IV. DISCUSSION

As stated above, Defendant contends that the Court should grant summary judgment on all counts because Defendant terminated Plaintiff for legitimate, nondiscriminatory reasons, and Plaintiff has not provided evidence of pretext. *See generally* ECF No. [28]. Plaintiff responds that he has presented evidence which fully supports a *prima facie* case that his termination was discriminatory. *See generally* ECF No. [38]. Plaintiff argues that the evidence is sufficient to permit a reasonable finder of fact to believe the purported reasons for terminating Plaintiff are pretextual, so summary judgment should not be granted. *See id.*

Title VII makes it unlawful for an employer to discriminate against an employee "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).[2] To survive summary judgment, a plaintiff must "present sufficient facts to permit a jury to rule in her favor," which may be accomplished through: (1) "direct evidence of discriminatory intent," (2) "a 'convincing mosaic' of circumstantial evidence that warrants an inference of intentional discrimination," or (3) "satisfying the burden-shifting framework set out in *McDonnell Douglas*."[3] *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1220, 1220 n.6 (11th Cir. 2019). Under *McDonnell Douglas*, "the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by showing (1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably." *Id.* at

---

[2] "Because the [Florida Civil Rights Act] is modeled after Title VII, and claims brought under it are analyzed under the same framework, the state-law claims do not need separate discussion and their outcome is the same as the federal ones." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010) (internal citation omitted).

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

1220–21. Then, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 1221. If the defendant succeeds, "the plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination, an obligation that merges with the [plaintiff's] ultimate burden of persuading the [factfinder] that she has been the victim of intentional discrimination." *Id.* (internal quotations omitted).

### A. *Plaintiff's Prima Facie* Case

As an initial matter, Defendant asserts that for the purposes of its Summary Judgment Motion it "will not dispute whether Plaintiff has made a *prima facie* case." ECF No. [28] at 13 n.2. The Court therefore accepts that Plaintiff has presented a *prima facie* case of employment discrimination and turns to whether Defendant articulates a legitimate, nondiscriminatory reason for its actions.

### B. Defendant's Legitimate, Nondiscriminatory Reasons

Defendant contends that it terminated Plaintiff for three legitimate, nondiscriminatory reasons: (1) for Plaintiff's rudeness, unprofessional behavior, and abusive conduct towards employees. Montesano was informed that Plaintiff's behavior, language, tone, and actions were often caustic, rude, and improper in the workplace, and included calling employees "worthless," "stupid," and "inept." (2) Plaintiff created "a discriminatory 'English Only' workplace where Spanish-speaking employees were barred from speaking Spanish"; and (3) for issuing "the 'Chain of Command' directive in which he threatened employees as a way to prevent them from reporting their concerns about him to upper management." ECF No. [28] at 13-14. Plaintiff does not contend that the proffered reasons are discriminatory. Rather, Plaintiff responds that there is ample evidence to show a genuine issue of material fact regarding whether Defendant's three purported reasons for terminating Plaintiff were the actual reasons or pretexts for discrimination.

The Court is satisfied that each of the three reasons proffered by Defendant constitutes a legitimate, nondiscriminatory reason for Plaintiff's termination and turns to the question of pretext.

### C. Whether Defendant's Proffered Legitimate, Nondiscriminatory Reasons are Pretextual

Because Defendant has provided legitimate, nondiscriminatory reasons for terminating Plaintiff's employment, Plaintiff must now "meet the employer's proffered reason head-on and rebut it; the plaintiff cannot succeed by merely disputing the wisdom of the employer's reason." *Wesley v. Austal USA, LLC*, 776 F. App'x 638, 644 (11th Cir. 2019). Plaintiff must show "*both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original).

Plaintiff argues that "there is ample evidence to show a genuine dispute as to whether each of the Defendant's three purported reasons for terminating his employment is merely a pretext for discrimination." ECF No. [38] at 10. Specifically, Plaintiff argues that pretext is shown by (1) discriminatory statements by Defendant's employees; (2) Defendant's hiring of an individual less qualified for the Director of Operations position; (3) Defendant's disparate treatment of the previous Director of Operations; (4) inconsistent reasons given for Plaintiff's termination; (5) lack of prior disciplinary actions or discussions of complaints; (6) the Declarations of his former employer and a former employee of Defendant; and (7) Defendant's failure to adhere to its own internal policies. Defendant responds that "Plaintiff has not presented any evidence of pretext or a convincing mosaic of circumstantial evidence that raises a reasonable inference that [Defendant] discriminated against him." ECF No. [44] at 2. The Court analyzes whether any of the six arguments advanced by Plaintiff rebuts or meets head on the nondiscriminatory reasons for terminating Plaintiff's employment proffered by Defendant.

### i. Discriminatory statements by Defendant's employees

Plaintiff asserts that certain statements made by Rico and Gonzalez demonstrate discrimination against Plaintiff on the basis of his race and national origin and, as such, motivated his termination. Defendant responds that those statements were stray remarks and Plaintiff has not shown that they caused any change in his employment.

Plaintiff testified that Rico referred to him as "gringo" and that Gonzalez told him "Oh, you think you broke up the Venezuelan Mafia." ECF No. [26][4] at 62:21-22, 65:17-21. Plaintiff was not aware of anyone else making a comment referring to his race in a derisive manner when he was employed by Defendant. Moreover, when he was referred to as "gringo" by Rico he "blew it off and let it go." *See* ECF No. [26] at 64:20. Plaintiff also concedes that Gonzalez's statement reflected her annoyance that Plaintiff terminated one of her friends. *Id*. at 90:12-16. The record evidence reflects that Plaintiff was terminated by Montesano and that no one else was present. *Id*. at 162:5-19. Furthermore, when asked at his deposition whether, while working for Defendant, anyone made a comment referring to or mentioning his race, those were the only two specific instances Plaintiff remembered. He stated, "the comments were made by the crew scheduler and by 1 or 2 of the individuals in flight following." *Id*. at 63:4-5. Plaintiff admitted that Montesano never commented on or referred to Plaintiff's race.

The "pretext inquiry centers only on the employer's beliefs, not on reality as it exists outside of the decision maker's head*." Hilliary v. FlightSafety Int'l, Inc.,* 778 Fed. Appx. 835, 839-40 (11th Cir. 2019). The isolated statements made by Rico and Gonzalez are insufficient to

---

[4] Plaintiff's deposition transcript filed as ECF No. [26] contains four pages of deposition transcript per page of the PDF. The Court's page and line citations for ECF No. [26] refer to the page and line of the deposition rather than the page number of the PDF.

demonstrate that Montesano's reason for terminating Plaintiff's employment was discriminatory. Plaintiff's argument that the statements made by non-decision maker employees were discriminatory does not rebut Defendant's proffered legitimate, nondiscriminatory reasons for terminating Plaintiff's employment.

### ii.     Defendant's hiring of a less qualified individual

Plaintiff contends that Defendant's choice to hire Alex Espinal ("Espinal") to replace him even though he lacked the FAA's required qualifications for the position is evidence of pretext. Defendant responds that the FAA concluded that Espinal is qualified to be Director of Operations, and unlike Plaintiff, no complaints had been presented that Espinal had trouble interacting with employees.

Plaintiff cites *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006), for the proposition that evidence of a Plaintiff's superior qualifications compared to their replacement may suffice to show pretext in some circumstances. The Eleventh Circuit set the applicable test: "[t]he plaintiff must be able to show that the disparities in qualifications are 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" *Cotton v. Enmarket Inc*, 809 F. App'x 723, 725-26 (11th Cir. 2020) (quoting *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007)).

Plaintiff is unable to demonstrate pretext by simply looking to the race and national origin of the person who replaced him. Although Plaintiff was replaced by a Hispanic and foreign-born individual, those facts alone are insufficient to demonstrate that Defendant's actions were not motivated by Plaintiff's rude interactions with employees, implementation of an "English Only" policy, and distribution of the "Chain of Command" email. The record evidence demonstrates that Defendant is regulated by the FAA and that the FAA granted a waiver for Espinal to assume the

Director of Operation position, as it had for Plaintiff's predecessor. *See* ECF No. [27-1] at 7. Plaintiff testified that Espinal was a good employee and that he had promoted him to Director of Training. ECF No. [26] at 173:1-9. In light of those undisputed facts, any disparity of qualifications is insignificant. Plaintiff has failed to satisfy his burden of presenting evidence from which a reasonable fact finder could conclude that the nondiscriminatroy reasons proffered by Defendant were pretext for discrimination.

### iii.    Defendant's disparate treatment of preceding Director of Operations

Plaintiff contends that the fact that Defendant allowed Plaintiff's Hispanic and foreign-born predecessor, Fernando Aguilar ("Aguilar") to stay employed as a pilot when Plaintiff replaced him as Director of Operations is evidence of pretext. Plaintiff argues that he was treated disparately because he was not afforded the same opportunity. Defendant responds that there are significant factual differences between Plaintiff's termination and Aguilar's termination. Unlike Plaintiff, Aguilar had previously been a Sky Lease pilot, so he was merely returning to his prior position when Plaintiff became the Director of Operations. Defendant also submitted that Aguilar did not receive complaints from subordinates or create discriminatory policies or prevent employees from reporting their concerns to upper management.

Furthermore, record evidence reveals that Plaintiff never sought or requested a position as a pilot. ECF No. [26] at 166:11-24. Defendant cites *Webb v. Int'l Bus. Machines Corp.*, 458 F. App'x 871, 877-78 (11th Cir. 2012) for the proposition that, because Plaintiff did not ask for a position, it not being offered cannot be used as evidence of pretext. In that case, the Eleventh Circuit held that the plaintiff could not establish that the defendant's proffered nondiscriminatory reasons for not hiring him were pretextual where he did not apply for or express specific interest in the position. *Id*. Because Plaintiff never applied for the position and was not returning to the

position like Aguilar, Defendant not offering Plaintiff to stay on as a pilot is insufficient to demonstrate pretext.

### iv.      Inconsistent reasons given by Defendant for Plaintiff's termination

Plaintiff argues that inconsistent reasons provided by Rey for Plaintiff's termination indicate that Defendant's proffered nondiscriminatory reasons are pretextual. Plaintiff contends that Rey told Plaintiff he was being asked to resign because of the manner in which he requested a raise. Plaintiff asserts that the inconsistency casts doubt on Defendant's proffered reasons. Defendant responds that Montesano terminated Plaintiff, not Rey, and, regardless, the reason proffered for termination by Rey "has nothing to do with his race or national origin." ECF No. [44] at 5.

"Inconsistencies in or shifting explanations for an employer's proffered reason for termination can indeed be evidence of pretext." *Luke v. Univ. Health Services, Inc.*, 842 F. App'x 503, 509 (11th Cir. 2021). "Nevertheless, the fact that the employer offers an additional reason for the employment decision does not suggest pretext if both of the employer's reasons are consistent." *Ritchie v. Indus. Steel, Inc.*, 426 F. App'x 867, 872 (11th Cir. 2011).

Here, the nondiscriminatory reasons proffered are not the same as the reason Rey told Plaintiff he was being terminated. Plaintiff testified that Rey told him "You were asked to leave because I didn't trust you because you held a gun to my head for a raise." ECF No. [26] at 182:19-21. "Nonetheless, additional, but undisclosed, reasons for an employer's decision do not demonstrate pretext." *Landolfi v. City of Melbourne, Fla.*, 515 Fed. Appx. 832, 835 (11th Cir. 2013). Because the reason given by Rey is different from but not inconsistent with the reasons proffered by Defendant for Plaintiff's termination, Plaintiff has failed to show pretext.

Furthermore, Plaintiff has not provided evidence of a discriminatory intent because the reason for his termination proffered by Rey is also nondiscriminatory.

> **v.    Lack of prior disciplinary actions against Plaintiff and lack of discussions about complaints with Plaintiff**

Plaintiff contends that because he was never confronted about alleged instances of rudeness, unprofessional behavior, and abusive conduct prior to being fired, and was never asked about or spoken to about the "English Only" rule or "Chain of Command" email prior to his termination, a reasonable juror could find in his favor. He also argues that the fact that there is no documentary evidence or documented history of disciplinary actions against him demonstrates that Defendant's three reasons for his termination are pretextual.

Plaintiff cites *Keene v. Prine*, 477 F. App'x 575, 582 (11th Cir. 2012), for the proposition that the absence of documented concerns about Plaintiff's performance is evidence from which a reasonable juror could doubt the proffered reasons for his termination. Although there are no documented concerns in Plaintiff's personnel file, there is undisputed record evidence which establishes that Montesano confronted Plaintiff about an incident involving Ramirez and accused Plaintiff of being "rude, abrupt, and . . . was gonna fight." ECF No. [26] at 177:19-21.

Moreover, record evidence indicates that Plaintiff was aware people complained about his attempt to enforce an "English Only" rule as required by the FAA. The relevant portion of his Plaintiff's deposition testimony reads:

> Q: Okay. Do you believe that your termination had – or your separation from employment – had anything to do with this English only requirement?
>
> A: I believe that may have been part of it. And I believe there was pressure on Montesano from, perhaps [Gonzalez] and [Rico] making their unhappiness known to Alfonso Rey, or directly to Montesano.

*Id*. at 117:12-18.

The record evidence reveals that Plaintiff sent the "Chain of Command" email because he "found out that [Gonzalez] and [Rico] were going directly to Montesano and Rey … to express their dissatisfaction with [his] leadership." *Id*. at 122:1-3, 7-8. Plaintiff informed Johnson that he was going to send the memo and Johnson agreed with his decision. *Id*. at 122:7-10. The record evidence demonstrates that Johnson told Plaintiff that the email was received badly by some people and that Plaintiff felt "some people might be [sic] the inference that it was received badly by Mr. Montesano or Mr. Rey when they heard about it was [sic] – and it came to their attention." *Id*. at 126:14-18. Plaintiff testified at his deposition that Johnson was not aware that Montesano was going to terminate Plaintiff's employment until Plaintiff told Johnson that he had been terminated. *Id*. at 165:13-17.

Record evidence also reveals that the complaint Plaintiff filed with the Department of Labor reflects his understanding that his termination was a direct and proximate result of his "effort to end the practice of subverting the chain of command and a reprisal for insisting on official communications being conducted in English." *See* ECF No. [26-3] at 23. Plaintiff's responses to interrogatories detail the timeline of events leading up to his firing. *See* ECF No. [26-1] at 13. On February 12, 2020, Plaintiff sent the chain of command email. *Id*. Eight days later, on February 20, 2020, Montesano called Plaintiff to his office and told Plaintiff that he was "not part of his team." *Id*. The next day Montesano demanded Plaintiff's resignation.

The record evidence in this case is very different from that in *Keene*, where the Court found that the record evidence revealed "an absence of documented concerns about Keene's performance." 477 F. App'x at 582. Here, the undisputed record evidence reveals that Plaintiff was aware his employees were raising complaints about him to Montesano and that in at least one instance Montesano confronted him about a complaint raised by an employee. The Court therefore

finds that the undisputed record evidence belies Plaintiff's claims that Defendant's proffered reasons are pretextual because he had not been confronted about his rudeness, unprofessional behavior, or "Chain of Command" email.

With regard to the "English Only" policy, Plaintiff asserts that there is no documentary evidence to show that he created a discriminatory "English Only" rule. He asserts that there must be a reasonable basis for the employer's beliefs and here there was no basis for the belief that he imposed a discriminatory policy. He also argues that to the extent he imposed an "English Only" policy, it was to comply with the FAA and was not discriminatory. The Court views all evidence in the light most favorable to the nonmoving party and so considers only that Plaintiff mandated English be the only language used in circumstances required by the FAA. Nevertheless, Eleventh Circuit precedent dictates that the Court should not conclude Montesano's judgment was wrong and replace it with Plaintiff's views or opinions.

In *Gonzalez v. Dep't of Mgmt. Servs.*, the Eleventh Circuit reiterated that:

> employers may terminate an employee for a good or bad reason without violating federal law. Title VII does not allow federal courts to second-guess nondiscriminatory business judgments, nor does it replace employers' notions about fair dealing in the workplace with that of judges. We are not a super-personnel department assessing the prudence of routine employment decisions, no matter how medieval, high-handed, or mistaken. Put frankly, employers are free to fire their employees for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.

683 F. App'x 738, 744 (11th Cir. 2017) (quoting *Flowers v. Troup Cty., Ga., Sch. Dist.*, 803 F.3d 1327, 1338 (11th Cir. 2015)). Whether or not Montesano should have investigated before firing Plaintiff is not relevant to the Court's analysis of pretext. As discussed above, the undisputed record evidence reveals that Plaintiff believed that Gonzalez and Rico complained about his "English Only" policy to Montesano. *See* ECF No. [26] at 30. Viewing the record evidence in the light most favorable to Plaintiff, Montesano terminated Plaintiff's employment for imposing the

complained of "English Only" policy based on erroneous facts. Nonetheless, the Court's role is not allowed to second-guess Montesano's business judgment even where his decision may be based on erroneous facts.

"A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race." *Brooks v. Cnty. Com'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (internal citation omitted). In light of the record evidence indicating complaints about the imposition of an "English Only" policy, *see* ECF No. [27-1] at 6, the Court does not find that Defendant's proffered reasons for Plaintiff's termination are pretextual.

   **vi.     Declarations of Plaintiff's former employer and a former pilot for Defendant**

Plaintiff provides the declarations of Nelson Ramiz ("Ramiz"), his former employer, and Golnaz Jalilvand ("Jalilvand"), a former pilot for Defendant. According to Ramiz, Plaintiff's former employer never received a complaint about Plaintiff, who was professional and demanded things be done in accordance with all regulations and conventions pertaining to aviation safety. ECF No. [32-1] at 2. Jalilvand's declaration states that her personal experiences with and observations of Plaintiff were that he was the most professional person working for Defendant. ECF No. [32-2] at 2. Jalilvand further observed that Defendant's employees spoke Spanish freely among themselves without criticism from Plaintiff. *Id*. at 3. She provides support for Plaintiff's contention that he only required that operational matters be discussed in English in compliance with FAA and international aviation conventions. *Id*. The Court views those declarations in the light most favorable to Plaintiff as the nonmoving party. Even accepting those declarations as true, the statements and observations do little to shift the Court's analysis. The observations of one of

Defendant's employees are insufficient to establish that Defendant did not have a nondiscriminatory reason to terminate Plaintiff's employment.

"An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct." *Damon v. Fleming Supermarkets Of Florida, Inc.*, 196 F.3d 1354, 1363 n. 3 (11th Cir. 1999). Neither Ramiz or Jalilvand made the ultimate decision to terminate Plaintiff, and neither offers firsthand knowledge of how that decision was made. Record evidence also establishes that at least three employees had complained about Plaintiff's rude behavior or imposition of an "English Only" policy to Montesano. Therefore, the declarations of Ramiz and Jalilvand are insufficient to show that the non-discriminatory reasons cited by Defendant for Montesano's choice to terminate Plaintiff's employment are pretext for discrimination.

### vii.    Defendant's alleged failure to adhere to its own internal policies

Plaintiff also asserts that Defendant's failure to follow its own progressive discipline policy creates a triable issue of fact as to Defendant's discriminatory intent. To support his contention Plaintiff again cites *Keene*, 477 F. App'x at 582. In that case the Eleventh Circuit held that "[t]he absence of documented concerns about [plaintiff's] performance, including her alleged failure to communicate, and the apparent departure from the [defendant's] policy in firing her without first taking any less drastic disciplinary step, offer further evidence from which a reasonable juror could come to doubt the proffered reason for [plaintiff's] termination." *Id*. Plaintiff also cites *Chavez v. Credit Nation Auto Sales, LLC*, 641 F. App'x 883, 891-92 (11th Cir. 2016), for the proposition that where a defendant fails to follow its progressive discipline policy, it creates a triable issue as to the defendant's discriminatory intent. The Eleventh Circuit has held that an employer's failure

to adhere to its written policy can provide evidence of pretext. *See Hill v. Seaboard Coast Line R.R. Co.*, 885 F.2d 804, 811 (11th Cir.1989).

Defendant responds that its progressive discipline policy is discretionary and not mandated. The relevant portion of the policy reads:

> Although employment is based on mutual consent and both the employee and the companies have the right to terminate employment at will, with or without cause or advance notice, we *may use progressive counseling at our discretion* (i.e. verbal warning, written disciplinary counseling or paid/unpaid suspension). However, we recognize that there are numerous employee problems that are serious enough to justify either a suspension or termination of employment without going through the progressive counseling steps.

ECF No. [26-1] at 72 (emphasis added). Because the policy is discretionary, Plaintiff has failed to demonstrate that Defendant failed to adhere to a policy and therefore has not provided evidence that the proffered non-discriminatory reasons for his termination are pretextual. The undisputed record evidence reveals that Montesano did speak to Plaintiff about an interaction with the director of IT that Montesano characterized as rude. Plaintiff has therefore failed to demonstrate that Defendant failed to comply with its permissive policy.

Viewing the record evidence in the light most favorable to Plaintiff, he has not "demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519 (11th Cir. 1997) (internal quotation marks and citation omitted).

## V. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment, **ECF No. [28]**, is **GRANTED**.

2. Final Judgment shall be entered by separate order.

Case No. 21-cv-24073-BLOOM/Otazo-Reyes

**DONE AND ORDERED** in Chambers at Miami, Florida, on March 15, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

19